**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Waste2Energy Holdings, Inc. | ) | Case No. 11-12504(KJC) |
| Waste2Energy Inc. | ) | Case No. 11-_____ (___) |
| Waste2Energy Group Holdings PLC | ) | Case No. 11-_____ (___) |
| Waste2Energy Technologies International Ltd. | ) | Case No. 11-_____ (___) |
| | ) | |
| Debtors. | ) | *Joint Administration Pending* |
| | ) | |
| | ) | |

**DECLARATION OF WAYNE P. WEITZ AS CHAPTER 11 TRUSTEE FOR PARENT COMPANY DEBTOR WASTE2ENERGY HOLDINGS, INC. IN SUPPORT OF THE CHAPTER 11 PETITIONS OF WASTE2ENERGY, INC., WASTE2ENERGY GROUP <u>HOLDINGS PLC, WASTE2ENERGY TECHNOLOGIES INTERNATIONAL LTD.</u>**

I, WAYNE P. WEITZ, as Chapter 11 Trustee (the "<u>Trustee</u>") for parent-company debtor Waste2Energy Holdings, Inc. (the "<u>Parent Debtor</u>"), hereby declare, under penalty of perjury, that the following information is true to the best of my knowledge, information and belief.

1.  I am the Chapter 11 Trustee for the Parent Debtor, which is presently a chapter 11 debtor in a case pending before this Court, assigned Case No. 11-12504(KJC).  I am familiar with the operations, financial condition, books, records and business affairs of the Parent Debtor and its subsidiaries and affiliates.

2.  I am authorized to submit this declaration on behalf of the Parent Debtor and thus its wholly-owned subsidiaries.  Except as otherwise noted, the facts set forth herein are based on my personal knowledge, review of relevant documents, and information provided to me by other professionals working with me or under my supervision, and reflect my opinions based on my knowledge, experience and information concerning the Parent Debtor and its operations.  If called upon to testify, I could and would testify competently to the facts set forth herein.

2

3. On August 8, 2011, Luppino Landscaping & Masonry, LLC, Andrew John Savage, William Paul Simmelink and Steven Benkofsky (the "Petitioning Creditors"), filed an involuntary chapter 11 petition against the Parent Debtor.

4. On August 9, 2011, the Petitioning Creditors filed an *Emergency Motion for Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(1) and 1104(a)(2)* [Case No. 11-12504, D.N. 5-10] (the "Trustee Appointment Motion").

5. The Petitioning Creditors and the Parent Debtor entered into a *Consent Order for Relief in an Involuntary Case*, which was granted by the Court on September 12, 2011 [Case No. 11-12504, D.N. 50], effectively converting the Parent Debtor's case from an involuntary to a voluntary chapter 11 proceeding.

6. On September 15, 2011, the Court entered an *Order Authorizing and Directing the Appointment of a Chapter 11 Trustee* for the Parent Debtor [Case No. 11-12504, D.N. 52].

7. Pursuant to that Order and after consultation with other parties-in-interest, the Office of the United States Trustee noticed the Court on October 4, 2011, of its recommendation to appoint the Trustee and requested approval of same [Case No. 11-12504, D.N. 59, 60]. On October 7, 2011, the Court entered an Order approving the appointment of the Trustee for the Parent Debtor [Case No. 11-12504, D.N. 62].

8. Since that date, I have operated the Parent Debtor's business pursuant to 11 U.S.C. § 1108 and begun investigating the financial affairs and assets of the Parent Debtor, which includes its equity interests in various subsidiaries and I have begun the process to obtain post-petition financing for the Parent Debtor's business and estate.

9. As set forth in the Trustee Appointment Motion, upon information and belief, the Parent Debtor was originally formed as a private company, undertook a private placement of

2

stock for approximately $5 million in 2007 and the proceeds of the equity sale were used to acquire most of the Parent Debtor's existing technology from an Icelandic company known as Enerwaste. In 2009, the Parent Debtor became a public company through a reverse merger with a defunct internet company, Maven Media Holdings, Inc. *See* Trustee Appointment Mot., ¶ 15.

10. Upon information and belief, the Parent Debtor engaged, through its wholly-owned subsidiaries, in the business of supplying proprietary gasification technology that converts into clean renewable energy municipal solid waste, biomass, and other solid waste streams traditionally destined for landfill. The Parent Debtor competes in the growing worldwide market for waste-to-energy systems that simultaneously destroy waste and recover energy via customized engineering solutions that are scalable, modular, and robust enough to operate in remote environments. *See* Trustee Appointment Mot., ¶ 16.

11. Upon information and belief, the Parent Debtor's primary asset is its equity interests in its subsidiaries, which were each formed as holding companies and which hold certain licenses and/or rights to technology processes that are utilized by the Parent Debtor in conducting its business.

12. The Parent Debtor owns 100% of the equity interest in Waste2Energy Inc. ("W2 Inc."), a Delaware corporation, which in turn owns 100% of the equity interest in Waste2Energy Group Holdings PLC, an Isle of Man public limited company ("W2 Group"), which in turn owns 100% of the equity interest in Waste2Energy Technologies International Ltd., an Isle of Man public limited company ("W2 Technologies" and together with W2 Group and W2 Inc., the "Subsidiary Debtors"). Upon information and belief, the majority of the intellectual property underlying the Parent Debtor's business is held by W2 Technologies.

3

49676/0001-8231903v2

13. The filing of the Subsidiary Debtors' chapter 11 petitions was necessitated to maximize the return of value for the Parent Debtor and the Subsidiary Debtors' creditor-bodies and estates and to prevent the piecemeal dismantling of the technology processes which underlie the intrinsic value of the Parent Debtor and the Subsidiary Debtors.

14. Upon information and belief, after the initiation of the Parent Debtor's chapter 11 proceeding, the Parent Debtor's former officers began engaging in efforts to dismantle and diminish the value of the Parent Debtor's assets. Specifically, the former officers of the Parent Debtor have marketed and attempted to sell the licensing and patent technologies, which underlie the Parent Debtor's business operations and which are held by the Subsidiary Debtors, to satisfy debts which the former officers believe are owed to them, including attempts to contract away the intellectual property rights held by the wholly-owned subsidiary, W2 Technologies.

15. The Trustee has been contacted by parties to whom the Parent Debtor's former officers attempted to market the intellectual property holdings of W2 Technologies. Among these parties is the entity interested in extending post-petition financing to the Parent Debtor, which would be secured by the Parent Debtor's assets and the licensing and patent technology held by the Subsidiary Debtors.

16. In my capacity as the Trustee for the Parent Debtor and in control of the wholly-owned subsidiaries, including, the Subsidiary Debtors, I determined that the filing of the voluntary chapter 11 petitions for the Subsidiary Debtors was in the best interests of the Parent Debtor and the Subsidiary Debtors to protect the interests of these entities and their creditors and to maximize value for same.

49676/0001-8231903v2

17. I am authorized to file the chapter 11 petitions for the Subsidiary Debtors in my capacity as the Court-appointed Trustee managing the businesses and affairs of the Parent Debtor, which includes 100% of the equity interests in the Subsidiary Debtors.

18. Absent the filing of these chapter 11 petitions, the former management of the Parent Debtor would be permitted to obtain preferential treatment of their purported claims above the claims of other creditors of the Parent Debtor and the Subsidiary Debtors. Moreover, absent the filing of these chapter 11 petitions, the asset-value of the Parent Debtor and the Subsidiary Debtors would be greatly diminished through a fire-sale improperly benefiting only the Parent Debtor's former management.

19. Simultaneously herewith, I will be filing, through my proposed bankruptcy counsel, a *Motion For Interim And Final Orders (I) Authorizing Post-Petition Secured Financing Pursuant To Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) And 503(b) Of The Bankruptcy Code; (II) Modifying The Automatic Stay Pursuant To Section 362(D) Of The Bankruptcy Code; (III) Providing Related Relief; And (IV) Scheduling Final Hearing* (the "Post-Petition Financing Motion"). As set forth in the Post-Petition Financing Motion and the Declaration in support thereof, in order for the Parent Debtor and the Subsidiary Debtors to secure sufficient cash financing to maximize value of the collective assets, the proposed post-petition lender is requiring that it be permitted to obtain a security interest in the assets of the Parent Debtor, including the Subsidiary Debtors and their assets, which includes the intellectual property supporting the Parent Debtor's business. Indeed, any post-petition lender would require such security given the lack of tangible assets held directly by the Parent Debtor.

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 24, 2012

_____
Wayne P. Weitz, Chapter 11 Trustee
for the Parent Debtor, Waste2Energy
Holdings, Inc.

6

49676/0001-8231903v2